Richard WILKERSON, and Lemmer
Wilkerson, Plaintiffs,

v.

C.D. THRIFT, individually, in his capacity as a law enforcement officer and as an agent of Defendant City of Rutherfordton, North Carolina; Robert Baker, individually, in his official

capacity as a law enforcement officer and as an agent of Defendant City of Rutherfordton, North Carolina; Christopher Justice, individually, in his capacity as a law enforcement officer and as an agent of the City of Spindale, North Carolina; Chief Jack Conner, individually, in his capacity as a law enforcement officer and as an agent of the City of Spindale, North Carolina; the City of Rutherfordton, North Carolina, a municipal corporation; the City of Spindale, North Carolina, a municipal corporation; and T. Eugene Mitchell, individually and in his capacity as an agent of Defendant City of Spindale, Defendants.

No. 1:99CV127–T.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 4, 2000.

Michael Lee King, King & Stockton, Salisbury, NC, for plaintiffs.

John H. Watters, N.C. State Bureau of Investigation, Department of Justice, Raleigh, NC, for North Carolina State Bureau of Investigation, interested party.

Frank P. Graham, Roberts & Stevens, P.A., Asheville, NC, for C.D. Thrift, Robert "Bob" Baker, City of Rutherfordton, North Carolina, defendants.

Frank J. Contrivo, Asheville, NC, for Christopher "Chris" Justice, individually, in his capacity as a law enforcement officer and as an agent of the City of Spindale, North Carolina, defendant.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motions to dismiss and a motion for judgment on the pleadings to the Magistrate Judge for a recommendation as to disposition. All of the parties except Defendant Justice, who moved for judgment on the pleadings, have filed objections to the recommendation. The Court therefore conducts a *de novo* review of those portions of the recommendation to which objections have been filed. 28 U.S.C. § 636(b).

## I. STANDARD OF REVIEW

Defendants moved to dismiss the complaint for failure to state causes of action upon which relief may be granted.[1] Fed. R.Civ.P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the Plaintiffs' complaint and must construe those facts in the light most favorable to the Plaintiffs. . . . [Dismissal may occur] only if it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). Conclusory allegations are examined in light of the factual claims. *Id.* "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id.*, § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spald-*

1. Defendants also moved, variously, to dismiss for lack of subject matter and personal jurisdiction.

*ing,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. STATEMENT OF FACTS

The Plaintiffs in this action are the parents of Sterling Wilkerson who is the Plaintiff in another action stemming from the events of July 4, 1996. *See, Sterling Wilkerson v. Hester,* Civil Action No. 1:99cv130, 1999 WL 1564975 (W.D.N.C. 1999). According to the allegations of the complaint, Plaintiff Richard Wilkerson allowed Sterling to borrow his 1992 Chevrolet pickup on July 4, 1996. Later that day, Richard learned that Sterling had been stopped by law enforcement authorities while driving. Richard and his wife, Plaintiff Lemmer Wilkerson, drove to the location where Sterling had been stopped. There, they saw the pickup but their son was absent. Defendant Thrift, a police officer with the City of Rutherfordton, was there and Richard asked him where Sterling was but received no answer. Richard then walked over to the truck and was told by Thrift not to touch it. At that point, Richard told Thrift that he was the owner of the pickup and began walking back toward his car. However, Thrift grabbed Richard's right arm and forced it behind his back with such force that it was broken and he then sprayed Richard with pepper spray. About this time, Defendant Justice, a police officer with the City of Spindale, arrived and exited his car with his police dog. On Justice's command, the dog attacked Richard, biting him on the leg, arm, face and head. Defendant Baker, another Rutherfordton police officer, handcuffed Richard and placed him on the ground. Richard suffered another dog bite after he was handcuffed and on the ground. Lemmer was also assaulted by Thrift who hit her head against the side of the pickup.

The Defendants charged Richard with resisting an officer, assault on an officer and assault on a government official. Lemmer was charged with disorderly conduct, creating a public disturbance, assault on a government official and inciting a riot. Plaintiffs allege that due to a conspiracy and perjured testimony, they were found guilty of some of these charges in the state district court. Richard was found guilty of two charges of resisting an officer and one charge of assault on an officer. He was found not guilty of assault on a government official. However, when he appealed these convictions to the state superior court, the jury found him not guilty of all charges. Likewise, in the district court, Lemmer was found guilty of disorderly conduct, creating a public disturbance and inciting a riot. She was found not guilty of assault on a government official. When Lemmer appealed her convictions to superior court, the jury acquitted her of all charges.

The Wilkerson family is African–American. Earlier during the day, Sterling was stopped by a deputy sheriff. After the stop, Defendant Thrift arrived at the scene and assisted in arresting Sterling. In the companion action, Sterling alleges that the deputy sheriff broke his finger during the stop and arrest.

## III. DISCUSSION

Plaintiffs have alleged violations of 42 U.S.C. § 1983 as a result of the use of excessive force, illegal seizure and unlawful prosecution. They have also pled violations of state constitutional rights, a claim of malicious prosecution and two claims of conspiracy to violate their civil rights, in violation of 42 U.S.C. §§ 1985 and 1986. The Magistrate Judge recommended the dismissal of some but not all claims. The objections will be considered sequentially.

### A. Suit against the Defendants in their individual capacities.

The caption of the complaint names the individual Defendants as, *e.g.,* "C.D. Thrift, individually, in his capacity as a law enforcement officer and as an agent of defendant City of Rutherfordton, North Carolina...." The Magistrate Judge concluded the caption was sufficient to put the

Defendants on notice that they were sued individually as well as officially. Defendants object, arguing that Plaintiffs' complaint alleges only conduct taken in their official capacities; thus, they claim no action lies against them personally. Defendants also claim that in the companion case of *Sterling Wilkerson v. Hester, supra,* the undersigned dismissed claims against Defendant Thrift because no allegations had been made that he acted in anything other than an official capacity. However, the issue of official versus individual capacity was not addressed in that decision.

■■■ As the Magistrate Judge noted, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir.1995). And, contrary to Defendants' position, they may be sued personally for actions taken in their official capacities.

> Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right...." [T]he phrase "acting in their official capacities" is best understood as a reference to the capacity in which the state officer is sued, *not the capacity in which the officer inflicts the alleged injury....* The requirement of action under color of state law means that [the defendant] may be liable for discharging respondents precisely because of her authority as [a state officer] .... Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, *whether they act in accordance with their authority or misuse it."*

*Hafer v. Melo,* 502 U.S. 21, 25–29, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) and *Scheuer v. Rhodes,* 416 U.S. 232, 243, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Monroe v. Pape,* 365 U.S. 167, 171–72, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961))) (emphasis added). As the Supreme Court recently stated, "State officers are subject to § 1983 liability for damages in their personal capacities ... *even when the conduct in question relates to their official duties."* *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n. 24, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (emphasis added). Thus, despite the fact that the Defendants may have been acting in "the course and scope of their employment as police officers" at the time of the events alleged, they still are subject to personal liability.

■■ Defendants' objections also claim the conduct alleged is not sufficiently egregious to state a claim for punitive damages against them in their individual capacities. The undersigned rejects this argument. *See, e.g., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Carter v. Barker,* 2000 WL 1008794 (4th Cir.2000) **($200,000 punitive damages award in § 1983 action affirmed on appeal against Chief Deputy Sheriff who physically and sexually harassed underling through abuse of his power.).** Plaintiffs have correctly noted in their objections that they did not assert punitive damages claims against the municipalities or the officers in their official capacities. It is therefore unnecessary to dismiss such claims.

## B. Qualified immunity.

Defendants Thrift and Baker argue the Magistrate Judge should have found them entitled to qualified immunity as to the claims against them in their individual capacities. The Magistrate Judge noted that neither officer had provided an affidavit concerning their conduct on the date in question. Defendants object, claiming an affidavit was not necessary to such a determination.

█ Richard Wilkerson has alleged that Thrift broke his arm during an unnecessary and unwarranted subduing and thereafter sprayed him with pepper spray. He has alleged that Baker allowed Justice's police dog to bite him after Baker had Richard handcuffed and on the ground. If the Plaintiffs' assertions of facts are true, no reasonable officer could have believed his conduct was warranted. *Lowery v. Redd,* 14 F.3d 595 (table), 1993 WL 527998 (4th Cir.1993). These allegations are sufficient to withstand dismissal at this point in the absence of sworn evidence from the officers concerning their perceptions of the unfolding events. *Id.*

## C. The excessive force claim as to Plaintiff Lemmer Wilkerson.

█ Plaintiffs object to the Magistrate Judge's recommendation that *Lemmer's* excessive force claim be dismissed because she has alleged only *de minimis* injury. Counsel is correct that this claim could be analyzed pursuant to the Fourth Amendment because Lemmer was not in custody and had not been arrested at the time of the incident. *Riley v. Dorton,* 115 F.3d 1159 (4th Cir.), *cert. denied,* 522 U.S. 1030, 118 S.Ct. 631, 139 L.Ed.2d 611 (1997). However, based on the allegations of the complaint, it is unclear at this time whether the harm allegedly inflicted occurred in the course of an attempted arrest or apprehension of Lemmer who was suspected of criminal conduct. *Jones v. Wellham,* 104 F.3d 620, 628 (4th Cir.1997). If not, the claim would be one for a "violation of the substantive due process right under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm," *i.e.,* the right to bodily integrity. *Id.* Since at this point it is unclear whether the § 1983 claim is governed by the Fourth, Eighth or Fourteenth Amendment, Lemmer's excessive force claim may not be dismissed.

## D. State law claim for malicious prosecution.

Defendants Thrift and Baker argue that this claim should be dismissed; however, their argument is directed to the conspiracy causes of action which are pled pursuant to federal statute. Since the objections are not specific and do not address this claim, they are rejected.

## E. The statute of limitations as to Defendants Conner and Mitchell.

Defendant Conner is the Chief of Police for the City of Spindale; Defendant Mitchell is the city's attorney. Plaintiffs allege these Defendants conspired with the Rutherfordton police officers to "cover-up" the use of excessive force by perjuring themselves in the state district court proceedings concerning Defendant Justice's use of the police dog. Their conduct, it is alleged, was not discovered by the Plaintiffs until a later but undisclosed time in a different state court. In response to the Defendants' motion to dismiss, counsel stated that this conduct was discovered during a hearing on November 4, 1996.

Attached to the amended complaint as an exhibit is a motion to have Defendants Conner and Mitchell held in contempt of court which was filed in state court on October 14, 1996. In the motion, Plaintiffs' attorney recounts that a subpoena was issued on August 16, 1996, to Conner for information concerning other incidents involving the use and handling of the police dog by Defendant Justice. Defendant Mitchell moved to quash the subpoena and that motion was heard on September 12, 1996. At that hearing, Conner was ordered to comply with the subpoena. The presiding judge also asked Conner and Mitchell if they knew of any incidents, other than those identified, involving Officer Justice and his police dog. They replied in the negative despite the fact that Plaintiffs' counsel had himself informed Mitchell of another such incident and a written complaint had been received by the police department nine days prior to

the hearing. Plaintiffs' conspiracy allegations as to these Defendants are based on this information.

Plaintiffs' original complaint was filed on July 1, 1999, but it did not name Conner and Mitchell as defendants.[2] On September 30, 1999, Plaintiffs moved for leave to amend the complaint to add them as Defendants. Conner and Mitchell opposed amendment, raising the issue of the statute of limitations. By Order filed January 5, 2000, the Magistrate Judge allowed Plaintiffs to amend the complaint and the amended pleading was filed on February 1, 2000. This complaint added Conner and Mitchell as parties and added the conspiracy causes of action.

Defendants moved to dismiss the claims against Conner and Mitchell based on the three year statute of limitations applicable to §§ 1983 and 1985 causes of action. At issue is the point in time when Plaintiffs "possess[ed] sufficient facts about the harm done to [them] that reasonable inquiry [would] reveal [their] cause of action." *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir.1995). Based on the exhibit attached to the amended complaint, it is clear that during the September 12, 1996, hearing, counsel became aware of sufficient facts to support the conspiracy claims. There is nothing in the record showing a hearing on November 4, 1996, other than counsel's mere reference thereto. Moreover, the pleadings themselves show that as of September 12, 1996, the Plaintiffs knew of the alleged conduct to which they object. The issue now becomes whether the amended complaint may be allowed to relate back to the time of filing of the original complaint.

■ In order for an amendment which adds new parties to relate back to the time of filing of the original complaint, Federal Rule of Civil Procedure 15(c)(3) requires (1) that "the claim ... asserted ... in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading;" (2) within 120 days of filing of the original complaint, the parties to be added receive such notice of the action "that the part[ies] will not be prejudiced in maintaining a defense on the merits;" and (3) the parties to be added knew that but for a mistake concerning the identity of the proper party, the action would have been brought against them. Fed.R.Civ.P. 15(c)(3); *Keller v. Prince George's County*, 923 F.2d 30, 33 (4th Cir. 1991). Here, the allegations of a conspiracy against Conner and Mitchell relate to their conduct during the September 12, 1996, hearing and thus, "arise from separate occurrences of 'both time and type.'" *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000). Moreover, the conspiracy claims were not apparent from the original complaint and therefore, may not relate back in time. *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir.1989). And, the Fourth Circuit has held that an amendment which seeks to add new parties may not relate back where there was a lack of knowledge of the proper party. *Id.*

> [A] new defendant cannot be substituted or added by amendment after the statute of limitations has run. Rule 15(c)(3) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party, and where that party is not chargeable with knowledge of the mistake.... There is relation back where a plaintiff has misnamed the party the plaintiff actually intended to sue who is already part of the lawsuit, but not where the plaintiff was simply wrong about who the plaintiff wanted to sue.

*Rennie v. Omniflight Helicopters, Inc.*, 165 F.3d 19 (table), 1998 WL 743678 *2 (4th Cir.1998). Defendants Conner and Mitchell are therefore entitled to dismissal from the action.

As to Defendants Thrift, Baker and Justice, the amended complaint alleges that they conspired to deprive Plaintiffs of con-

---

**2.** That complaint did name Justice and the City of Spindale as Defendants.

stitutional rights by charging them with the offenses of which they were convicted in the state district court. They also are alleged to have testified falsely in those proceedings. Although not specified, it is assumed the charges were brought on the day of arrest, or shortly thereafter. And, although no dates for the district court trials are specified, the convictions appear to have been obtained in 1996. Thus, the amended complaint filed in February 2000 was not timely. And, because the statute of limitations for filing conspiracy claims had expired, relation back is not proper as to these added claims. Fed.R.Civ.P. 15(c)(1); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (Because the statute of limitations had not yet barred the plaintiff from asserting parallel claims, amendment and relation back allowed.).

Moreover, the undersigned would dismiss these claims in any event. Plaintiffs' conspiracy claims, based on 42 U.S.C. §§ 1985(2), (3), and 1986, allege that Thrift, Baker and Justice conspired to cover up their wrongdoing by bringing false charges against the Plaintiffs and that Mitchell, Conner and the municipalities conspired to assist in the cover up as it related to Justice's custom of using his police dog on African–Americans.

The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.... This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy.... Indeed, we have specifically rejected

section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir.1995) (internal citations omitted). The allegations here are nothing more than speculation. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 423 (4th Cir.1996). There is another reason for the Defendants' conduct which is just as likely as racial animus: the officers filed the charges and allegedly perjured themselves to avoid discipline for the alleged use of excessive force. In cases with far more compelling facts than those at hand, the Fourth Circuit has concluded that conspiracy claims were not stated. *Simmons, supra* (involving use of a race profile); *Hinkle, supra* (rejecting conspiracy under §§ 1983, 1985 and 1986 where police officer destroyed shirt worn by victim in excessive force claim); *Gooden v. Howard County*, 954 F.2d 960 (4th Cir.1992) (conspiracy claim by African–American tenant taken to psychiatric hospital after report of disturbance rejected). Moreover, as to Defendant Justice's alleged custom of releasing his police dog on African–Americans, "it simply must be shown that there was a 'single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.' " *Simmons*, 47 F.3d at 1378 (citing *Lenard v. Argento*, 699 F.2d 874, 882–83 (7th Cir.1983)). It is not alleged that the other Defendants knew of Justice's custom.

The dismissal of the § 1985 claim is dispositive of the § 1986 claim since it is dependent on the existence of a § 1985 violation. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir.1985).

**F. Plaintiffs' motion to amend the complaint a second time.**

Taking note of a comment in the Magistrate Judge's Memorandum, Plaintiffs now seek leave to amend their complaint to add a claim of conspiracy pursuant to § 1983.

A new conspiracy claim based on § 1983 instead of § 1985 would also be time-barred and thus, amendment of the complaint a second time would be futile. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen,* 206 F.3d 411, 420 (4th Cir.2000).

■ Moreover, the undersigned would not grant leave to amend the complaint a second time. The events at issue occurred over six years ago. Plaintiffs were granted leave to amend their complaint in February of this year yet, now, they seek another amendment over a year after the action was begun. While delay alone is insufficient reason to deny amendment, delay accompanied by prejudice and bad faith is not. *Id.* This motion was brought only after Plaintiffs learned that portions of their action would be unsuccessful upon adoption of the Memorandum and Recommendation. *Id.* Plaintiffs have failed repeatedly to cure deficiencies in this complaint. *Pittston Co. v. United States,* 199 F.3d 694, 705 (4th Cir.1999). The case is in no better posture now than when filed over one year ago. Yet, as time progresses, memories fade and the ability of both sides to present a cogent case deteriorates. Amendment at this point would be prejudicial not only to the Defendants but also to the Plaintiffs who are entitled to have their day in court and who have viable claims which if proven will certainly be successful.

## G. Plaintiffs' objection to the dismissal of the City of Rutherfordton.

The Magistrate Judge recommended dismissal of claims against the City of Rutherfordton because the complaint does not sufficiently allege actual or constructive knowledge of custom and failure to correct unconstitutional practices. Plaintiffs object claiming the complaint adequately alleges deficient police training programs and failure by the City to stop unlawful conduct by police officers.

Reviewing the amended complaint, Plaintiffs have alleged that the City had deficient training programs concerning proper procedures for vehicle stops, arrest, search and seizure of an individual and for impounding of a vehicle, the use of pepper spray and excessive force during arrests. Plaintiffs also alleged a practice or custom of using excessive force and pepper spray against African–Americans and a pattern or practice of vehicle stops targeting African–Americans which the City failed to correct. The Magistrate Judge found that because Plaintiffs did not allege that the City had knowledge of prior incidents and a failure to correct the practice, the motion should be granted.

■ It is correct that "proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom." *Semple v. City of Moundsville,* 195 F.3d 708, 713–14 (4th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1243, 146 L.Ed.2d 102 (2000). However, at this point, the issue is whether the Plaintiffs have stated a claim.

The substantive requirements for proof of municipal liability are stringent.... The Supreme Court, however, has [ ] confirmed that section 1983 claims are not subject to a "heightened pleading standard" paralleling the rigors of proof demanded on the merits.... [A]fter *Leatherman [v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)], a section 1983 plaintiff seeking to impose municipal liability must satisfy only the usual requirements of notice pleading specified by the Federal Rules. He is required under Rule 8(a)(2) to provide nothing more than " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." There is no requirement that he detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence

of an official policy or custom and causation.

*Jordan by Jordan v. Jackson*, 15 F.3d 333, 338–39 (4th Cir.1994) (quoting *Leatherman*, 113 S.Ct. at 1163 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))) (footnote omitted). Thus, although Plaintiffs' claims may not withstand summary judgment, at this point they have stated a claim upon which relief may be granted. "The[ ] allegations are sufficient to provide the [City] notice of the nature of the claim against them and the grounds on which it rests, and it does not appear beyond doubt that there is no set of facts which the [Plaintiffs] could prove in support of this claim which would entitle them to relief." *Id.*, at 340 (holding the district court committed reversible error by granting the motion to dismiss.).

### IV. ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1.  The Defendants' motions to dismiss the claims against them in their personal capacities are hereby **DENIED**;

2.  The Defendants' motions to dismiss punitive damages claims against them in their personal capacities are hereby **DENIED**;

3.  The Defendants' motions to dismiss on the grounds of qualified immunity are hereby **DENIED** without prejudice to renewal;

4.  The motion of Defendants Conner and Mitchell to dismiss on the grounds of statute of limitations is hereby **GRANTED** and the Plaintiffs' claims against them are hereby **DISMISSED** in their entirety;

5.  The Defendants' motions to dismiss the conspiracy claims are hereby **GRANTED**;

6.  The Defendants' motions to dismiss the claims of malicious prosecution are hereby **DENIED**;

7.  The Defendants' motions to dismiss the excessive force claims are hereby **DENIED** without prejudice;

8.  The Defendants' motions to dismiss the alternate state constitutional claims are hereby **GRANTED**;

9.  The motion of Defendant Justice for judgment on the pleadings is hereby **DENIED**;

10. The motion of Defendant City of Rutherfordton for dismissal is hereby **DENIED**; and

11. The Plaintiffs' second motion to amend the complaint is hereby **DENIED**.

For purposes of clarification, the claims remaining in the action are the Plaintiffs § 1983 claims for excessive force, illegal seizure and unlawful prosecution, and the common law claim of malicious prosecution.

The Clerk of Court is instructed to schedule a pre-trial conference before the undersigned with all due expediency.

### MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon the Motion to Dismiss filed by defendants City of Spindale, Chief Jack Conner, and T. Eugene Mitchell Motion; the Motion to Strike and Motion for Judgment on the Pleadings filed by defendant Christopher Justice; and the Motion to Dismiss filed by defendants C.D. Thrift and the City of Rutherfordton. Plaintiffs have filed timely responses to all motions, and a hearing was conducted on April 4, 2000, at which oral arguments were presented. Having fully considered all arguments, the undersigned enters the following findings, conclusions, and recommendations.

## FINDINGS AND CONCLUSIONS

### I. Background

This matter is a companion to *Sterling Wilkerson v. Hester*, 1:99cv130, 1999 WL 1564975 (W.D.N.C.1999), and *Simmons v. Justice*, 1:99cv141 (W.D.N.C.1999), wherein plaintiffs have alleged that various members of law enforcement in Rutherford County, North Carolina, have intentionally infringed the constitutional rights of African–American citizens through use of excessive force in effecting arrests, and through conspiring to further violate such rights by knowingly covering up exculpatory evidence, thereby interfering with plaintiffs' federal constitutional rights to due process and a fair trial. Plaintiffs have asserted federal causes of action pursuant to 42, United States Code, Sections 1983, 1985(2), 1985(3), and 1986, and supplemental state causes of action for violation of protections afforded plaintiffs under the North Carolina Constitution and the North Carolina common law.

As shown in plaintiffs' responsive brief, the version of the facts provided by defendants is markedly different from the version of the facts submitted by plaintiffs. When considering motions to dismiss under Rule 12, Federal Rules of Civil Procedure, this court must construe all facts alleged by plaintiffs in the well-pleaded complaint as true. Inasmuch as plaintiffs have not offered a concise statement of the facts in their responsive brief (having, instead, offered a line-by-line rebuttal of facts alleged by defendants), the undersigned has drawn the following factual summary directly from the Amended Complaint.

Plaintiffs herein are African–Americans. They allege that all individual defendants herein are white.

The genesis of this case is found in a roadside stop of plaintiffs' son, near his mother-in-law's home, on July 4, 1996. That day, plaintiff Richard Wilkerson loaned his 1992 Chevrolet pickup truck to his son, Sterling. Later that day, Mr. Wilkerson received word that his son had been stopped by the police in Spindale, North Carolina, at which time Mr. and Mrs. Wilkerson got in their other car and drove to the scene. Mr. Wilkerson got out of the vehicle, saw his truck, but did not see his son, and asked defendant C.D. Thrift, a Rutherfordton police officer, where his son was. Defendant Thrift responded to Mr. Wilkerson by instructing him "not to come up here with a smart attitude," and never answered the question which Mr. Wilkerson posed.

At that point, Mr. Wilkerson walked to the cab of his truck and looked inside. Defendant Thrift then told Mr. Wilkerson not to get inside, drive, or touch the truck, and Mr. Wilkerson responded that he was the owner of the truck. Mr. Wilkerson left the truck at that time and proceeded to walk back to his other car.

Plaintiffs further allege that while Mr. Wilkerson was walking back to the car, Defendant Thrift, without warning or justification, grabbed Mr. Wilkerson's right arm, forced it behind his back, and broke it. After having broken Mr. Wilkerson's arm, Defendant Thrift then sprayed him in the face with pepper spray. Despite this treatment, Mr. Wilkerson rubbed his eyes with his left hand and apologized to Defendant Thrift, although he knew not what for. At this point, with Mr. Wilkerson's arm broken and his eyes burning from pepper spray, defendant Christopher Justice, a Spindale police officer, arrived on the scene with his police dog and commanded the dog to attack Mr. Wilkerson. The dog bit him on his leg, arm, face, and several times on the head.

Plaintiffs next allege that after the initial dog attack caused Mr. Wilkerson to fall to the ground, defendant Robert Baker, another Rutherfordton officer, handcuffed him. Even though Mr. Wilkerson was prone on the ground with his hands cuffed behind his back, defendants Justice (the dog handler), Thrift (the officer who had just broken Mr. Wilkerson's arm), and Baker (who had effected the arrest and,

therefore, had custody of Mr. Wilkerson), allowed the dog attack to continue.

As to Mrs. Wilkerson, plaintiffs allege that she saw all these events, but in the end was also not immune from attack. Mrs. Wilkerson alleges that Defendant Thrift, without justification, hit her so hard that she hit and bounced off the pickup truck and stumbled into the roadway. Plaintiffs, however, have not alleged that Mrs. Wilkerson sustained any physical injuries.

After allegedly assaulting plaintiffs without provocation or just cause, defendants arrested them, placed them in jail, and charged them with a number of offenses. Mr. Wilkerson was charged by these defendants with resisting an officer, assault on an officer, resisting an officer, and assault on a government official; Mrs. Wilkerson was charged with disorderly conduct-public disturbance, assault on a government official, and inciting a riot. Plaintiffs allege that these criminal charges were pursued by defendants in an attempt to cover up their own wrongdoing.

Plaintiffs also allege that defendants Jack Conner, Spindale's Chief of Police, and T. Eugene Mitchell, Spindale City Attorney, conspired with one another and with the other defendants herein to further cover up the officers' alleged wrongdoing. It is also plaintiffs' contention that defendants Conner and Mitchell committed perjury in state district court by failing to disclose, when compelled to do so by court order, the facts concerning a prior incident where Defendant Justice allegedly commanded his dog to attack another person, in that case an African–American child on a bicycle. In addition, plaintiffs contend that the alleged facts forming the basis of such conspiracy were not uncovered until November 4, 1996, during a hearing at which such facts surfaced. A reasonable inference that can be gleaned from plaintiffs' complaint is that the object of such alleged conspiracy was to interfere with plaintiffs' rights to a fair trial and to seek redress for grievances by securing convictions that would purportedly stand in bar to civil liability.

In state district court, plaintiffs were convicted of all charges, except assaults on government officials. On appeal to state superior court, defendants were acquitted by a jury on all charges upon which the state district court convicted.

## II. Standards Applicable to Motions to Dismiss and Motions for Judgment on the Pleadings

Defendants have moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiffs have failed to state cognizable claims. Rule 12(b) authorizes dismissal based upon a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* at 1832 (citation omitted). For the limited purpose of making a recommendation as to disposition of defendants' motions, the undersigned has accepted as true the facts alleged by plaintiffs in the Amended Complaint and viewed them in a light most favorable to plaintiffs.

A motion for judgment on the pleadings is appropriate where ultimate facts are not in dispute. *A.S. Abell Co. v. Baltimore Typographical Union,* 338 F.2d 190, 193 (4th Cir.1964). Under Rule 12(c), Federal Rules of Civil Procedure, judgment on the pleadings should be entered where it is apparent that there are no issues of material fact and that only questions of law exist. *Moreno v. University of Maryland,* 420 F.Supp. 541 (D.Md.1976), *aff'd,* 556 F.2d 573 (4th Cir.1977). Where there are no factual issues, judgment on the pleadings should be granted where the moving party clearly is entitled to the judgment it seeks as a matter of law, *Jadoff v. Gleason,* 140 F.R.D. 330, 331 (M.D.N.C.1991). As will be discussed below, the Motion for Judgment on the Pleadings should not be granted because substantive issues of material fact abound in this case.

### III. Discussion

#### A. Introduction

This case is not unlike the case which serves as its factual predicate, *Sterling Wilkerson v. Hester, supra* ("*Hester*"). As in *Hester,* where an officer allegedly broke Sterling Wilkerson's finger while effecting his arrest, allegations are made herein that officers broke Richard Wilkerson's arm, pepper-sprayed him, and commanded a police dog to attack him, in what plaintiffs claim was an exercise of excessive force. Likewise, Mrs. Wilkerson contends that officers, without provocation or just cause, hit her so hard as to bounce her off a truck and into a roadway.

In considering the issues herein, the court has considered and attempted to follow the reasoning of the district court in *Hester* and in *Simmons.*

#### B. C.D. Thrift's, Robert Baker's, and the City of Rutherfordton's Motion to Dismiss

Defendants Thrift, Baker, and the City of Rutherfordton have filed a joint Motion to Dismiss and supported such their mo-

tion with a memorandum of law. The undersigned will address each reason why these defendants contend that they are entitled to the relief they seek.

#### 1. Motion to Dismiss Punitive Damages Claim

These defendants, collectively referred to as the Rutherfordton defendants, contend that public officials sued in their official capacities, as well as local government entities, such as cities and towns, cannot be held liable for punitive damages. In support of that contention, they cite *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), and *Angell v. Leslie,* 832 F.2d 817 (4th Cir.1987). A municipality is immune from punitive damages, *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); and punitive damages are not available against a person sued in his or her official capacity, *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir.1995), because an official-capacity suit is, *eo nominee,* a suit against a municipality. The undersigned, therefore, will recommend dismissal of plaintiffs' claim for punitive damages, to the extent that it may have been asserted against the municipal defendants or the individual defendants sued in their official capacities.

#### 2. Individual Capacity

The Rutherfordton defendants next contend that all personal-capacity claims against them should be dismissed and stricken because the complaint does not mention any acts other than those performed in their official capacities. For purposes of brevity, the undersigned will assume that all individual defendants have joined in that argument.

Defendants cite no federal authority for their proposition, and the United States Supreme Court has held contrary to their argument. Liability under Section 1983 turns on the capacity in which the state actor is sued, not the capacity in which they acted when injuring plaintiffs. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The applicable test to

determine whether a defendant has been sued in his or her individual capacity is provided in *Castle v. Wolford,* 165 F.3d 17 (table), 1998 WL 766724 (4th Cir.1998), which provides, as follows:

> [A] litigant need not expressly plead that state officials are being sued in their individual, rather than official, capacities. Rule 9 does not require that a § 1983 plaintiff expressly plead capacity, and it also prohibits courts from imposing a more stringent standard.
>
> Under the standard adopted by this court, when a plaintiff does not allege capacity specifically, the Court "must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." One factor indicating that suit has been filed against a state official in a personal capacity might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. *Another indicator that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages because such relief is not available in official-capacity suits. The underlying inquiry is whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.*

1998 WL 766724, at *3 (citations omitted; emphasis added; copy placed in court record).

At the hearing, respective counsel argued whether the individual defendants had been sued in their individual capacities. Applying the reasoning of the appellate court in *Castle* to the allegations in the Amended Complaint, the undersigned finds that the plaintiffs have sued these individual defendants not only in their official capacities, but also in their individual capacities. That is indicated by the caption of the amended complaint (albeit im-

perfect), the allegations contained in the Amended Complaint specifying plaintiffs' intent to sue defendants individually as well as officially, and plaintiffs' inclusion of claims for punitive damages, which may only be asserted against state actors sued in their individual capacities. To the extent all defendants have challenged whether plaintiffs have alleged personal-capacity suits, the undersigned finds that they have and that the claims for punitive damages, while not applicable to municipalities and individuals sued in their official capacities, as the Rutherfordton defendants point out, are applicable to defendants sued in their individual capacities.

### 3. Qualified Immunity

As to the claims against them in their individual capacities, defendants Thrift and Baker next argue that this action should be dismissed because they are entitled to the protections of qualified immunity. Public officials, sued in their individual capacities, are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. 2806. Qualified immunity is a question of law.

If it is undisputed that the right allegedly violated was clearly established at the time, the defendant asserting a qualified-immunity defense may still be immune from damages for violation of that right if, under the circumstances, a reasonable officer could have believed that his particular conduct was lawful. A court must make an objective, although *fact-specific,* inquiry

into the legal reasonableness of the conduct. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The lawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable officer charged with knowledge of established law; a defendant's motives are irrelevant to the qualified-immunity inquiry. *Id.*

Where a plaintiff alleges that a police officer has used excessive force in violation of the fourth amendment, the qualified-immunity inquiry is the same as the inquiry made on the merits. *Hopkins v. Andaya*, 958 F.2d 881, 885 n. 3 (9th Cir.1992); *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir.1991); *Dixon v. Richer*, 922 F.2d 1456 (10th Cir.1991). The court in *Quezada* explained, as follows:

> While qualified immunity is a powerful defense in other contexts, in excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor.

The "objective-reasonableness standard" flows from the analysis the Supreme Court applied in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), wherein it held that use of deadly force by police to prevent the escape of an apparently unarmed suspected felon violated the fourth amendment.

The qualified-immunity test necessitates three discrete determinations under *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990). First, the court must identify the specific right allegedly violated (in this case, the fourth-amendment right to be free from the use of excessive force). Second, the court must determine whether that right was clearly established (in this case, it was). Third, the court must make the ultimate determination of whether a reasonable officer could have believed his conduct was lawful.

In a case originating in this district, *White v. Leonhardt*, 46 F.3d 1130 (table case), 1995 WL 26696 (4th Cir.1995), the Court of Appeals held that, regardless of a plaintiff's version of events, the qualified-immunity inquiry may be made as early as the initial-pleading stage. It need not wait for resolution of issues of fact, because the standard is based upon the officer's perception, not the plaintiff's, and how a reasonable officer would respond in such circumstances.

> Officer Leonhardt is entitled to immunity from liability for his use of force if a reasonable officer could have believed that White posed a threat of harm to others when Leonhardt fired. Plaintiff argues that there are various issues of disputed fact in this case that foreclose summary judgment on qualified immunity grounds.
>
> \*   \*   \*   \*   \*   \*
>
> Plaintiff's contentions misconceive the law of qualified immunity. The immunity inquiry depends on the reasonableness of the officer's perceptions, not the plaintiff's.

*Id.*, 1995 WL 26696, at \*2 (citation omitted). In this case, the court presently has no basis for making the *fact-specific* inquiry, inasmuch as no affidavit from the officer(s) asserting the privilege has been provided setting forth their perceptions.[1]

The burden is on the officer asserting qualified immunity to come forward. Once a plaintiff proves that the asserted right was clearly established, *Clark v. Link*, 855 F.2d 156 (4th Cir.1988); the defense of qualified immunity is for the defendant to prove, not for the plaintiff to disprove, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). While the undersigned will recommend that the Motion to Dismiss be denied without preju-

---

1. The reason for the lack of an affidavit supporting such motion is difficult to discern, in view of the fact that the same motion was made last year in the companion case, with the same lack of supporting affidavits, and the same end result.

dice as to the claim of qualified immunity of the officer(s), and the substance of such claim can be reasserted "at any time," in accordance with Rule 56, Federal Rules of Civil Procedure.

### 4. Motions to Dismiss Pursuant to Rules 12(b)(1), (2), & (6)

#### A. Plaintiffs' Claims Generally

The Rutherfordton defendants claim that because of plaintiffs' convictions in state district court for resisting arrest, their claims for false arrest, unconstitutional seizure, and malicious prosecution should be dismissed. In support, defendants contend that collateral estoppel prevents the relitigation of the issue of lawful arrest, which is an essential element of the civil claims asserted herein and of the criminal charges of resisting arrest upon which the state district court convicted. *See Burton v. City of Durham,* 118 N.C.App. 676, 680, 457 S.E.2d 329 (1995). Once the element is established through conviction, even a later acquittal will not destroy the preclusive effect, unless a plaintiff can establish that such conviction was procured with perjured testimony. *Hill v. Winn–Dixie Charlotte, Inc.,* 100 N.C.App. 518, 397 S.E.2d 347 (1990). Plaintiffs have alleged that such convictions were obtained by means of perjury and have provided particulars of such alleged misconduct in their complaint and exhibits annexed thereto. Taking those allegations as true, as this court is compelled to do on a Rule 12 motion, the undersigned must recommend denial of the motion to dismiss based on these claims. As to plaintiffs' excessive force claims, "lawful arrest" is not an essential element of such claims and, logically, officers do not have *carte blanche* to use excessive force in effecting even a lawful arrest.

At the hearing, defendants argues that the allegations concerning Defendant Baker were not sufficient to state claims under Section 1983. The pertinent allegations of the complaint concerning Defendant Baker are that he effected Mr. Wilkerson's arrest by placing handcuffs on him, at which point Mr. Wilkerson was in his custody, but that he failed to take any steps to end the dog attack, even though Mr. Wilkerson was prone, on the ground, and unable to defend himself. The undersigned finds such allegations to suffice. *See Hafner v. Brown,* 983 F.2d 570 (4th Cir.1992) (allegations of acquiescence by fellow officers who witnessed the beating of the arrestee sufficient to state Section 1983 cause of action). The undersigned, therefore, will recommend dismissal of the motion to dismiss as to this claim.

#### B. Mrs. Wilkerson's Excessive Force Claims

The Rutherfordton defendants argue that not every push or shove violates the fourth amendment. Read in a light most favorable to this plaintiff, she has alleged that, without provocation, she was hit a blow that resulted in her being bounced off the parked pickup truck and into the road. These are very serious allegations; however, Mrs. Wilkerson has not alleged that such assault resulted in any injury. Where there is no more than an allegation of *de minimis injury,* a plaintiff cannot state a claim for excessive force. *Riley v. Dorton,* 115 F.3d 1159 (4th Cir.), *cert. denied,* 522 U.S. 1030, 118 S.Ct. 631, 139 L.Ed.2d 611 (1997). To that end, the undersigned will recommend that Mrs. Wilkerson's claim for excessive force be dismissed.

### 5. Motion to Dismiss Supplemental State–Law Claims

#### a. State Constitutional Claims

The Rutherfordton defendants next argue that the court should also dismiss the supplemental state-law claims. For cause, these defendants argue that state constitutional claims are only viable where an adequate remedy is not available at common law. Here, the Rutherfordton defendants point to common-law claims for assault and battery (and the Spindale defendants point to more), which plaintiffs chose not to pur-

sue. Plaintiffs have not challenged such argument in their response, which is contained in their Motion for Judgment by Default. Docket Entry 43. (Plaintiffs' response to the other defendants' motions is contained in a separate pleading.) It appearing that defendants' argument is consistent with current state law, *see Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992), the undersigned will recommend dismissal of plaintiffs' supplemental state constitutional claims as barred as a matter of well-settled state law.

### b. State Common–Law Claim

Plaintiffs have also asserted a supplemental common-law claim for malicious prosecution. Defendants again argue that such claim should be dismissed because probable cause has been found as an essential element of the state district court convictions entered against each plaintiff. Again, plaintiffs have properly challenged their convictions in state district court as having been obtained fraudulently through use of perjured testimony. Based upon the reasoning of the district court in *Hester*, the undersigned finds defendants' Motion to Dismiss such supplemental common-law claim to be without merit and will recommend that it be denied.

### 6. Conspiracy Claims

The Rutherfordton defendants next argue that plaintiffs' Section 1985/1986 conspiracy claims should be dismissed.[2] Unlike the alleged conspiracy in *Hester*, which the district court found to be deficient to state a claim, plaintiffs have alleged herein that the individual defendants conspired to cover up the alleged wrongful conduct of July 4, 1996, by unlawfully concealing evidence that was subject to disclosure under a court order and which likely

would have resulted in no convictions at the district-court level.

The undersigned has read the district court's decision in *Hester* carefully and must find that these causes of action for conspiracy also do not meet the Section 1985 test provided in *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir.1995). The only element that is deficient is that of *racial animus*, which cannot be assumed simply because the officers and other state actors were white and the alleged victims were African–Americans. While clearly an inference of racial animus can be found as to Defendant Justice's alleged misuse of his police dog on African–Americans through a pattern and practice (which is discussed more thoroughly *infra*), that inference does not necessarily transfer to the alleged conduct of others who are accused of attempting to cover up the alleged wrongful conduct.

This element of "racial motivation" is hard to allege and is not met by the allegations of a conspiracy to deprive plaintiffs of their rights to due process and a fair trial. Instead, a reasonable inference which arises from the pleadings is that the object of the alleged conspiracy was to shelter the town and the officers from civil liability through perjury. The economic motivation alleged is not necessarily a racial one, and the mere dichotomy of race between plaintiffs and defendants is not sufficient to bridge that gap. In accordance with *Simmons v. Justice*, the undersigned will recommend that plaintiffs' conspiracy claims be dismissed without prejudice in the event additional information is uncovered in discovery that would justify reinstatement of those claims.[3]

---

**2.** Had plaintiffs alleged a civil conspiracy claim under Section 1983 rather than Section 1985, it could have succeeded upon a mere showing of acquiescence by fellow officers who witnessed the beating of the arrestee. *See* Hafner v. Brown, 983 F.2d 570 (4th Cir. 1992).

**3.** The elimination of the conspiracy claims would in no way impact plaintiffs' Section 1983 claims, some of which depend upon a finding that the district-court convictions were obtained by fraud. Such fraud may be shown without the necessity of pursuing separate conspiracy claims.

### 7. Claims Against the City of Rutherfordton

Plaintiffs have alleged that the actions of the City of Rutherfordton's officer, Defendant Thrift, are attributable to inadequate training, insufficient policies, and the practice of Rutherfordton. Similar allegations have been made against the Town of Spindale concerning the actions of its K–9 officer, Defendant Justice.

In response to Rutherfordton's argument, plaintiffs substantively argue that they "allege facts that sufficiently covers the principal theory necessary for liability to attach to the City of Rutherfordton," and cite paragraph 16 of their complaint. Plaintiffs make a similar argument in their separate brief responsive to the City of Spindale's motion, but point to paragraph 18 and the decision of the district court in *Simmons v. Justice, supra*, which found that a claim had been stated.

As to the City of Rutherfordton, plaintiffs have made a number of very broad allegations, but have not alleged what training, policies, or practices were inadequate or that such inadequacy should be inferred from unfettered and unchecked misconduct by their police officers, Thrift and Baker. No allegation is made that defendants Thrift and Baker had committed similar acts in the past or that Rutherfordton had notice of any such misconduct.

As to the Town of Spindale, plaintiffs make similar allegations, but also provide the specificity missing as to Rutherfordton. In paragraph 18(iv), plaintiffs contend that Spindale had been put on notice before July 4, 1996, of Defendant Justice's pattern and practice of misuse of his police dog against African–Americans and use of excessive force against law-abiding members of the public. In *Simmons v. Justice, supra*, the district court found similar allegations were sufficient to state a claim against the City of Spindale. (This case was cited by the court in *Simmons* as additional notice to the Town of Spindale).

Local governing bodies, such as counties, municipal corporations, and municipal officials sued in their official capacities, are "persons" that can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief when alleged unconstitutional action executes a governmental policy or custom. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Two elements are required to establish municipal liability: (1) a plaintiff's harm was caused by a constitutional violation, and (2) the municipality is responsible for that violation. There is no requirement to prove an "abuse of governmental power" in order to state a claim. *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). A municipality is responsible only when the execution of the government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts injury. *Monell v. Department of Social Servs.*, *supra*, at 694, 98 S.Ct. 2018; *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir.1987).

To avoid imposing vicarious municipal liability rejected by *Monell*, any theory of municipal liability must be carefully controlled at three critical points:

(1) identifying the specific policy or custom;

(2) fairly attributing the policy and the fault for its creation to the municipality; and

(3) finding the necessary affirmative link between identified policy or custom and the specific violation.

*Spell v. McDaniel, supra*, at 1389. Where a constitutional deprivation is not an official act of the municipality, the only recovery lies against the officer in his individual capacity. *Hughes v. Blankenship*, 672 F.2d 403, 405–06 (4th Cir.1982). Deliberate indifference on the part of a city to a need for training may amount to a city policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103

L.Ed.2d 412 (1989). For liability to attach, the deficiency in training must actually have caused the officer's violation of the plaintiff's constitutional rights. *Id.,* at 391, 109 S.Ct. 1197. In addition, a municipality may be held liable where unconstitutional practices are part of the developed custom or usage and there is (1) actual or constructive knowledge of custom by policymakers and (2) failure as a matter of specific intent or deliberate indifference to correct the practice. *Spell v. McDaniel, supra,* at 1390–91; see *Kopf v. Wing,* 942 F.2d 265 (4th Cir.1991), *cert. denied,* 502 U.S. 1098, 112 S.Ct. 1179, 117 L.Ed.2d 423 (1992).

In this matter, plaintiffs have not made sufficient allegations that would support a claim of liability against the City of Rutherfordton. Plaintiffs, however, have alleged sufficient specific facts that tend to show that the Town of Spindale was on prior notice that Defendant Justice was abusing his office by unlawfully unleashing lethal force without just cause and took no steps to curtail such abuse. For these reasons, the undersigned will recommend dismissal of the City of Rutherfordton, but retention of the Town of Spindale due to allegations of (1) actual or constructive knowledge of custom by policymakers and (2) failure as matter of specific intent or deliberate indifference to correct the practice. *Spell v, McDaniel, supra.*

## C. Christopher Justice's Motion for Judgment on the Pleadings

### 1. Introduction

As a procedural matter, Defendant Justice's Motion for Judgment on the Pleadings should be denied because, as discussed above in part II, *supra,* a motion for judgment on the pleadings is appropriate where ultimate facts are not in dispute. *A.S. Abell Co. v. Baltimore Typographical Union,* 338 F.2d 190, 193 (4th Cir.1964). Judgment on the pleadings should only be entered where it is apparent that there are no issues of material fact and that only questions of law exist. *Moreno v. University of Maryland,* 420 F.Supp. 541 (D.Md. 1976), *aff'd,* 556 F.2d 573 (4th Cir.1977). Based upon the facts as alleged in the complaint, Defendant Justice would be entitled to no relief as a matter of law.

### 2. Qualified Immunity

Defendant Justice's primary contention is that he is entitled to the protections of qualified immunity. Again, no affidavit has been filed by Defendant Justice indicating what he perceived. The undersigned has considered the determination of the district court in *Simmons v. Justice, supra,* wherein a similar claim of qualified immunity was made by Defendant Justice. As here, it was alleged in that case that Defendant Justice failed to issue a verbal warning before employing his police dog against an individual—in that case, a child.

Viewing Plaintiff's allegations in a light most favorable to him, the conduct of the Defendant law enforcement officers was objectively unreasonable and a violation of Omar Simmons' Fourth Amendment rights. These rights were clearly established in 1996 and a reasonable person in the officer's position should have known about them. Consequently, at this stage of the proceedings, Officers Justice and Connor do not have qualified immunity for their alleged actions.

*Simmons v. Justice, supra,* 87 F.Supp.2d at 532. The undersigned can add little to such analysis. For the reasons discussed herein and the reasons more thoroughly discussed in *Simmons v. Justice,* the undersigned will recommend that Defendant Justice's Motion to Dismiss based on qualified immunity be denied.

### 3. Other Reasons Submitted for Dismissal

Defendant Justice also argues that the court should dismiss the federal claim of malicious prosecution, the federal claim of excessive force against Mrs. Wilkerson, the state constitutional claims, the state claims of malicious prosecution, and the conspiracy claims. For purposes of brevi-

ty,[4] the undersigned hereby reincorporates its earlier findings and recommendations which recommend that such requests be denied in part and granted in part.

### D. The Spindale Defendants' Motions to Dismiss

#### 1. The Statute of Limitations

Defendants Conner and Mitchell first contend that the claims asserted against them must be dismissed as barred by the three-year period of limitations. While defendants correctly cite the applicable limitations period, the undersigned finds that the allegations of the complaint are sufficient to support a finding that the period did not commence, as to the alleged fraud, on the day of the alleged assaults, but on the day plaintiffs reasonably discovered the alleged fraud upon which their claims against these particular defendants are based, which was November 4, 1996, making their November 4, 1999, initial filing timely.

#### 2. Defendants' Claim to Qualified Immunity

Defendants Mitchell and Conner also claim qualified immunity. Plaintiffs assert in their first cause of action that these defendants, in allegedly perjuring themselves and concealing court-ordered evidence, violated their due-process rights protected by Section 1983. The court cannot find any of the prongs of qualified immunity applicable to such alleged conduct, and no affidavit is submitted that would show conduct other than that alleged by plaintiffs.

Simply stated, qualified immunity is not available here because any reasonable public official, especially an attorney, would know that perjury and concealment of evidence was unlawful on the date these events allegedly occurred. As to the town's claim of qualified immunity, no case has been cited that a town is entitled to

qualified immunity, which is a protection typically afforded officers sued in their individual capacities. Indeed, well-settled case law is contrary to the argument of these defendants. Municipal corporations are not entitled to qualified immunity, and towns may not rely upon the good faith of officers as a defense. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *see Huemmer v. Mayor of Ocean City,* 632 F.2d 371 (4th Cir.1980).

#### 3. Town Attorney Not A Person Under Section 1983

Spindale defendants next contend that Mr. Mitchell is privately employed by the town to render legal advice. While town defendants have cited a number of cases which hold that appointed counsel and prosecutors are not liable under Section 1983, such defendants did not mention cases that hold that attorneys who allegedly conspire with state officials to violate constitutional rights act under color of state law. *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984); *Phillips v. Mashburn,* 746 F.2d 782 (11th Cir.1984). Here, plaintiffs have specifically alleged that Mr. Mitchell conspired with the Chief of Police to hide evidence and suborn perjury that, purportedly, was intended to deprive plaintiffs of their constitutional rights to due process. For these reasons, the undersigned will further recommend that Defendant Mitchell's motion to dismiss based on immunity be denied.

#### 4. Probable Cause

Like the other defendants, Spindale defendants also claim that plaintiffs' Section 1983 claims should be dismissed based on the state district court's implicit finding of probable cause. As discussed above, such basis is without merit due to the allegations that such convictions were fraudulently secured. The undersigned reincorporates such discussion and recommendation.

---

**4.** Neither the plaintiffs nor the defendants took the court's suggestion to file joint motions and briefs, which has created a morass

of overlapping motions, arguments, and responses.

## 5. Municipal Liability

In conjunction with the City of Rutherfordton's identical motion, this issue was discussed above. For the purposes of brevity, the undersigned reincorporates such discussion and ultimate recommendation that the Town of Spindale's motion be denied.

## 6. Section 1985/1986 Conspiracy Claims

As discussed above, the undersigned recommends dismissal of such claims based on insufficient allegations of racial animus.

## 7. State Constitutional claims

As discussed above, the undersigned recommends dismissal of such claims based on the presence of adequate state remedies.

## 8. Common–Law Claim for Malicious Prosecution

As discussed above, the undersigned recommends that such claim not be dismissed, inasmuch as plaintiffs have alleged that the underlying probable cause was founded upon fraud.

## RECOMMENDATION

IT IS, THEREFORE, RESPECTFULLY RECOMMENDED that

(1) defendant Christopher Justice's Motion to Strike (# 37), contained in his answer but not supported by a brief, be **DENIED**;

(2) defendants City of Spindale's, Jack Conner's, and T. Eugene Mitchell's Motion to Dismiss (# 38) be **GRANTED** in part and **DENIED** in part, as more completely discussed above;

(3) defendants C.D. Thrift's, Robert Baker's, and the City of Rutherfordton's Motion to Dismiss (# 39) be **GRANTED** in part and **DENIED** in part, as more completely discussed above;

(4) defendant City of Rutherfordton be **DISMISSED** from this action for the reasons discussed above; and

(5) defendant Christopher Justice's Motion for Judgment on the Pleadings (# 46) be **GRANTED** in part and **DENIED** in part, as more completely discussed above.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This Memorandum and Recommendation is entered in response to defendant Christopher Justice's Motion to Strike (# 37), defendants City of Spindale's, Jack Conner's, and T. Eugene Mitchell's Motion to Dismiss (# 38), defendants C.D. Thrift's, Robert Baker's, and the City of Rutherfordton's Motion to Dismiss (# 39), and defendant Christopher Justice's Motion for Judgment on the Pleadings (# 46).

April 6, 2000.